## KROYER v. UNITED STATES.
### No. L–93.

Court of Claims.
Jan. 18, 1932.

GREEN, Judge.

Since the beginning of this case, the plaintiff has asked leave to amend his petition by changing the title of the plaintiff from simply "John M. Kroyer" to "John M. Kroyer, for the use of himself and of Fidelity & Casualty Company of New York, a corporation, as the interest of each may appear." This motion has been granted, but for reasons that will hereinafter appear we have concluded that this change does not affect the decision in the case. For convenience in the opinion, when the word "plaintiff" is used, it will refer to John M. Kroyer only.

This case presents a situation where the plaintiff, a taxpayer, had filed a return of income and profits taxes in due time and paid the tax shown by his return, but the Commissioner of Internal Revenue assessed an additional tax in the sum of $75,243.58. About a month later the plaintiff filed a claim for abatement thereof together with a bond with himself as principal and the Fidelity & Casualty Company of New York as surety, the penalty of the bond being $75,000 and conditioned on the payment of any part of such additional assessment found to be due by the Commissioner of Internal Revenue. Later the commissioner rejected plaintiff's claim and assessed a further additional tax in the sum of $66,503.76. Thereafter certain complications arose which have resulted in the bringing of this suit.

The plaintiff moved to Los Angeles, Cal., and the additional assessment first made, and which was secured by the bond, was transferred from the First collection district in San Francisco to the Sixth collection district in Los Angeles, where the plaintiff then resided. The second additional assessment of $66,503.76 remained on the books of the collector of the First district at San Francisco, and on January 27, 1925, the collector of the First district at San Francisco collected from the Fidelity & Casualty Company, surety on the bond given to secure the payment of the first additional assessment, the sum of $75,000, which was paid by the surety with the purpose and intent to discharge the obligations of the bond and received for that purpose. But instead of transmitting this sum of $75,000 so collected to the collector at Los Angeles, where the same should have been applied under the terms of the bond as a credit on the tax account referred to in and secured by said bond, that is, the first assessment, the collector at San Francisco posted the same on his books

Theodore B. Benson, of Washington, D. C. (Dwight E. Rorer, of Washington, D. C., on the brief), for plaintiff.

Lisle A. Smith, of Washington, D. C., Charles B. Rugg, Asst. Atty. Gen. (W. F. Evans, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, WHALEY, and GREEN, Judges.

to the credit of the second additional assessment appearing against the plaintiff in the amount of $66,503.76 principal and $8,496.24 interest. On January 13, 1925, the collector for the Sixth district of Los Angeles filed a collector's claim for abatement of the outstanding tax account against plaintiff then appearing on his books in the amount of $75,243.58, being the amount of the first additional assessment made. This claim on the part of the collector was allowed by the Commissioner of Internal Revenue and the first additional assessment was abated on September 24, 1925, as uncollectable. On January 7, 1929, the plaintiff filed two claims for refund, the basis of the claim being in each case that the additional tax of $66,503.76 and interest thereon in the amount of $8,496.24 were illegally collected from the plaintiff after the expiration of the statutory period within which said collection could legally be made. These claims for refund were rejected.

After the claim for refund had been filed by the taxpayer and the Commissioner of Internal Revenue become apprised of the action of the collector of the First district of California in so applying the $75,000 collected from the surety company to the credit of the second additional assessment, the account against the taxpayer in the sum of $75,243.58, which had been transferred to the Sixth district of California was by the commissioner's instructions reinstated upon the books of the collector and transferred back to the First district at San Francisco, and the collector of the First district was instructed to adjust his books by posting the payment made by the surety on the bond to the credit of the first additional assessment made, amounting to $75,243.58. The collector made such adjustments accordingly, and canceled the credit which had erroneously been made to the second additional assessment.

■■ The issue raised by plaintiff may be stated in a simple form, but it presents a novel and somewhat subtle question. The money collected from the surety company was in the first instance applied on the second additional assessment against the collection of which the statute of limitations had run at the time the payment was made. Such being the facts, it is contended on the part of the plaintiff that the action of the collector in making the collection and crediting the amount collected to the second additional assessment was in both instances contrary to law, and that by reason thereof the plaintiff is entitled to file a claim for refund and recover the amount

so paid. Under the circumstances of the case, we do not think this contention can be sustained. The facts are that the bonding company made the payment in compliance with its bond, which was conditioned on the payment of the first additional assessment. Manifestly, it was intended to have the money so paid applied on the first additional assessment and not on the second. By error and mistake the collector at San Francisco applied the payment on the second additional assessment, which the bond did not cover, and subsequently, by a further error, the collector at Los Angeles filed a collector's claim in abatement of the first additional assessment and had it abated, although the payment should have been applied thereon and no abatement of any kind made. Later, when the commissioner discovered, through the filing of the claim for refund by the plaintiff, that these errors had been made, he had the books corrected. The abatement of the first additional assessment was set aside and the payment applied thereon, as was intended when it was made. The account against the taxpayer for the second additional assessment was reinstated, and corrections upon the books of the respective collectors were made accordingly. It is now urged on behalf of plaintiff that the original action taken by the collectors, with reference to the application of the money paid by the bonding company and the abatement of the first additional assessment, is irrevocable, and that the commissioner had no right to have proceedings taken to the end that the payment should be applied as had been intended, and the collectors' books corrected to make the record show what ought to have been done in the first instance. Several authorities are cited in support of the position taken by the plaintiff, but we do not think any of them have any application. There are some instances where a change in the application of a payment by a debtor would operate to the prejudice of other creditors, such as is shown by the case of The Sophia Johnson (D. C.) 237 F. 406, in which it was held that the party to whom the payment was made would not be permitted to change the application thereof, but in this case no other creditors are involved. Moreover, the money was not applied in the manner in which the bonding company intended and had the right to expect when the payment was made. The payment was made by the bonding company to extinguish its indebtedness on the bond, and defendant could not properly use it for any other purpose. It is true the collector obtained an entry abating the additional tax first

assessed for the payment of which the bond was given, but this was after the payment had been made, and in any event we do not think the government can be bound by the bookkeeping errors of its agents, when such errors in no way affect the real equities of the case or result to the prejudice of a party making a payment. In Wisconsin Central R. R. Co. v. United States, 164 U. S. 190, 210, 17 S. Ct. 45, 51, 41 L. Ed. 399, the court held, in effect, that the government was not bound by the action of one of its officers resulting from an "erroneous conclusion * * * as to the legal effect of the particular statutory law under or in reference to which he is proceeding."

 A fortiori we think it would follow that the government was not bound by some action of one of its officers resulting from a mistake of fact which, when such action was corrected, left the whole matter in such a situation that the party complaining had received no injury and been done no injustice. It should also be noted in this connection that, while the word "abatement" usually refers to a cancellation or an annulment of a tax or assessment which has been changed on application of the taxpayer, the particular abatement in this case was an altogether different matter. It was a claim filed by the collector on form 53 to abate an uncollectable tax, so far as the collector was concerned. This form of abatement of claim is used by collectors for the purpose of clearing their books of a tax which they have determined to be uncollectable, and for the purpose of advising the bureau of this condition. It does not cancel or annul the tax, but, on the contrary, the Treasury Regulations provide, in substance, that the obligation to pay the tax still remains upon the person assessed, and it is the collector's duty to use diligence to collect it if opportunity arises.

Another, and, as we think, valid defense, is presented on behalf of the government. The case on the merits is similar to and controlled by the case of United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743, and Mascot Oil Co. v. United States, 42 F.(2d) 309, 70 Ct. Cl. 246, affirmed, 282 U. S. 434, 51 S. Ct. 196, 75 L. Ed. 444. In both of these cases the taxpayer filed a claim in abatement. In the Barth Co. Case, the taxpayer gave a bond to secure the payment of the tax; in the Mascot Oil Co. Case, a certain sum was deposited in a bank in escrow to insure the payment of the tax. It was held in each case that a contractual liability was created whereby the government obtained an additional remedy. In the Barth Co. Case the action was directly on the bond but commenced after the statute of limitations had run against the collection of the tax; in the Mascot Oil Co. Case the plaintiff and taxpayer deposited with the bank in escrow a sufficient sum to secure payment of the tax finally determined to be due, thus creating a liability on the part of the bank for the amount of the tax. Subsequently, the plaintiff itself paid over the amount of the tax instead of the bank making payment, as had been agreed. In both of these cases it was held that the fact that the statute of limitations had run against the collection of the tax was immaterial. In our opinion, mistakes of the agents of the government do not prevent the application of the rule laid down in the two cases last cited, and if that rule is followed it is clear that the plaintiff cannot recover herein.

The government sets up the further defense that the payment in controversy having been made by the bonding company for the purpose of discharging its liability upon the bond, the plaintiff can in no event rightfully set up a claim to the money so paid, and that the statute with reference to refunds has no application to such a case, but the views above expressed make it unnecessary to give further consideration to the case.

Our conclusion is that the petition should be dismissed, and it is so ordered.