T.C. Memo. 1995-588


UNITED STATES TAX COURT


WILLIAM D. COLBURN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12817-93.          Filed December 12, 1995.


<u>Charles L. Abrahams</u>, for petitioner.

<u>Roy Wulf</u>, <u>Michael McMahon</u>, <u>Lisa Kuo</u>, for respondent.


MEMORANDUM OPINION

SCOTT, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1989 in the amount of $10,998.

This case is before us on respondent's motion for summary judgment filed February 6, 1995, and petitioner's motion for summary judgment filed March 3, 1995. Respondent in her motion asks us to determine that petitioner failed to include in his reported income for 1989, the amount of $32,811 of interest paid to him in connection with a refund of an overpayment of tax for 1966. Petitioner asks us to determine that he properly reported on his 1989 income tax return his interest income in connection with the refund of his 1966 income tax.

Also pending is petitioner's motion to amend his petition, which the parties agreed should be denied if respondent's motion for summary judgment is granted and, therefore, should be acted upon after action on respondent's motion for summary judgment.

The parties have stipulated all facts that either party considers necessary for a disposition of the motions for summary judgment. All the stipulated facts are found accordingly.

At the time of the filing of the petition in this case, petitioner resided in San Diego, California. Petitioner timely filed his Federal income tax return for the taxable year 1989 with the Internal Revenue Service Center in Ogden, Utah. On his 1989 return, petitioner reported $104,635 of interest income.

An assessment in the amount of $157,494.09 for income taxes and $40,542.40 in restricted interest for the taxable year 1966 was made to petitioner's account on July 28, 1971. On July 30,

1973, a $6 fee for collection costs (lien fee) was assessed on petitioner's account for the taxable year 1966.

On September 18, 1973, petitioner made a payment to the Internal Revenue Service (IRS) in the amount of $218,292.77 on his 1966 tax liability to satisfy the Federal tax liens on land he owned in Nevada. On October 15, 1973, respondent made a refund to petitioner in the amount of $20,300.21, of which $49.93 was an interest overpayment.

In March 1971 respondent issued a notice of deficiency to petitioner for the taxable year 1966 in which it was determined that petitioner was liable for additions to tax pursuant to sections 6651(a)(1) and 6653(a).[1] Petitioner litigated his 1966 tax liability in this Court, docket No. 3625-71. On December 6, 1973, over the objection of respondent, petitioner was permitted to amend his petition. Petitioner states that he amended his petition to bring the issue of the 1966 tax liability into the Tax Court proceeding.

An opinion was filed by this Court on February 3, 1977, Colburn v. Commissioner, T.C. Memo. 1977-29, and pursuant to the opinion a decision was entered under Rule 155 on July 22, 1977. In accordance with the opinion, the decision set forth an overpayment of tax due petitioner for the year 1966 in the amount

---

[1] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

of $81,054.21, an addition to tax for 1966 due from petitioner under section 6651(a) in the amount of $33,301.12, and an addition to tax for the year 1966 in the amount of $6,660.22 due from petitioner under section 6653(a). The additions to tax were timely assessed on December 12, 1977.

Petitioner appealed our decision to the Court of Appeals for the Ninth Circuit. The Court of Appeals affirmed our decision in an unpublished opinion dated March 19, 1981.

During the first week of the calendar year 1988, the IRS master file account for petitioner was credited $39,961 (the total additions to tax determined by this Court for 1966) in an entry coded "608". Code 608 means "statute expiration". The entry was posted effective as of January 15, 1979. During the fiftieth week of the calendar year 1989, the IRS master file account for petitioner was debited $39,961 in an entry coded "609". Code 609 means "reversal of statute expiration". This entry was also posted effective as of January 15, 1979.

Petitioner did not receive the amounts owed to him by respondent for 1966 within the time he had expected to receive the refund. In October 1988 petitioner engaged an attorney to expedite the issuance of the payment. On November 13, 1989, respondent issued a check to petitioner in the amount of $186,177.79. Respondent computed the amount of the payment made to petitioner as follows:

Tax liability                                    $76,439.88

```
Interest assessed as of 9/18/73        32,903.58
Penalties and lien fee assessed        39,967.34
  Total liability                     149,310.80

Petitioner's payment on 9/18/73       218,292.77
Less refund on 10/15/73              (20,250.28)
Net payments                          198,042.49

  Total overpayment                    48,731.69

Interest on overpayment               137,446.10

  Total payment to petitioner         186,177.79
```

Petitioner contends that respondent was not entitled to offset the additions to tax against the overpayment, on the basis that the period of limitations for collection of the additions to tax had expired before November 13, 1989, when petitioner states the collection of the additions to tax were made. Petitioner computed the interest reported on his return as follows:

```
Total payment to petitioner          186,177.79
Less overpayment per decision        (81,054.21)
Balance                              105,123.58
Math error                              (488.58)
Interest reported per return         104,635.00
```

On March 17, 1993, respondent mailed a notice of deficiency to petitioner for the year 1989, which stated that petitioner received $137,446 in interest income in the taxable year 1989, rather than the amount of $104,635 of interest income reported by petitioner on his Federal income tax return for 1989.

Section 6502(a)[2] as applicable to this case provides that where assessment of a tax has been made within the period of limitations applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within 6 years after the assessment (with an exception not here applicable).  If, as petitioner contends, "collection" of the additions to tax was made on November 13, 1989, the period of limitations provided for in section 6502(a) would have expired before the time of collection.

The facts here are clear that the payment which gave rise to the overpayment to petitioner was made on September 18, 1973, which was before the assessment of the additions to tax for 1966

---

[2]  SEC. 6502.  COLLECTION AFTER ASSESSMENT.

(a) Length of Period.--Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy

under section 6343 after such 6-year period, then before such release).

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.  If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

on December 12, 1977, pursuant to our decision entered July 22, 1977.  At the time of the assessment of the additions to tax for 1966, there was no amount to collect since the overpayment of tax we had determined was in excess of the additions to tax we determined to be due from petitioner.  Therefore, when the assessment of the additions to tax for 1966 was made respondent had collected for 1966 tax and additions to tax in excess of the amount due from petitioner for that year.

Neither party has cited a case directly bearing on petitioner's contention that payment prior to assessment is not a collection of the tax later assessed.[3]  A case with facts similar to those here present is Hefti v. I.R.S., 8 F.3d 1169 (7th Cir. 1993).  However, in that case the taxpayers were claiming a refund of the tax they paid prior to its assessment on the ground that such amount was a "deposit" for which no valid assessment had been made.

The facts in the Hefti case were that in 1984 the IRS issued a notice of deficiency to the taxpayers (the Heftis) for their taxable years 1980 through 1982.  The Heftis petitioned this Court for redetermination of those deficiencies, and the case was tried and decided by this Court in favor of the IRS.  The decision of this Court was affirmed by the Court of Appeals for the Eighth Circuit.  Hefti v. Commissioner, T.C. Memo. 1988-22,

---

[3]  It may be noted that the lien fee of $6 was paid after it was assessed.

affd. without published opinion 894 F.2d 1340 (8th Cir. 1989). On October 4, 1988, while the case was on appeal, the IRS received a check from the Heftis in the amount of $155,500 which the IRS applied to the Heftis' 1980 through 1982 tax liability. On December 5, 1988, which was prior to the affirmance of our opinion by the Court of Appeals, the IRS assessed the amount of the deficiencies and additions to tax for the tax years 1980 through 1982 in accordance with the decision of this Court. Approximately 1 year after having made the $155,500 payment to the IRS, the Heftis filed claims for refund for the years 1980 through 1982 asserting that the IRS had failed to make lawful assessments of the tax for the years 1980 through 1982. A few weeks after the claims were filed, the IRS denied the claims. The District Court ruled for respondent that the claims were properly denied, and the Court of Appeals for the Seventh Circuit affirmed that decision, holding that the assessments made by the IRS on December 5, 1988, while an appeal from the decision of this Court was pending in the Court of Appeals for the Eighth Circuit, were valid assessments made within the appropriate time after a decision by this Court and prior to that decision's becoming final. The court pointed out that the Heftis argued that their case was not a typical case alleging an overpayment and seeking a refund; rather they asserted that it involved a demand by them for a return of "deposits" based on the failure of the Government to assess properly their tax liabilities. The

court held that on December 5, 1988, when assessments of the Heftis' tax liabilities for the years 1980 through 1982 were made, the assessment period had not expired. The court sustained the District Court's holding for the IRS on a summary judgment motion.

In the instant case, petitioner does not argue, as did the Heftis, that the assessment made in accordance with a decision by this Court after a payment of the tax liability had been made was not valid, but argues that the payment made before the assessment was not a valid collection. The Hefti case indicates, however, that a tax payment made by a taxpayer prior to an assessment may be a proper collection of the tax.

It is apparent that the provisions of section 6502(a) with respect to collection after assessment contain the assumption that there is an unpaid amount at the time of assessment. In effect, petitioner's argument here that collection has not been made within the period provided under section 6502(a) is an argument that the $218,292.77 paid by petitioner on his 1966 tax liability was a deposit and not a payment of 1966 taxes and additions to taxes. Petitioner makes this argument even though he stipulated as a fact that "on September 18, 1973, petitioner made a payment in the amount of $218,292.77 on his 1966 tax liability." Clearly, if petitioner made a payment on his tax liability and thereafter the tax was properly assessed, as is also stipulated here, there is nothing to be collected after the

assessment, and petitioner's argument as to collection being barred under section 6502(a) in this case must fail, as did the taxpayers' argument in the Hefti case that the payment before assessment was a deposit.

There are numerous cases involving whether an amount sent to the IRS prior to an assessment of tax is a payment of that tax or is merely a deposit. See Blatt v. United States, 34 F.3d 252 (4th Cir. 1994); Risman v. Commissioner, 100 T.C. 191 (1993). Generally, cases involving whether an amount sent to the IRS is a payment or a deposit present a factual question of whether there was a proposed tax that the amount sent to the IRS was intended to discharge. However, these cases indicate that the latest date of payment of the tax is the date of the assessment. The case of Ford v. United States, 618 F.2d 357, 360 (5th Cir. 1980), contains an analysis of cases involving whether amounts sent to the IRS prior to assessment of a tax are payments at the time received by the IRS or at the time of the assessment of the tax. However, inherent in the discussion in Ford v. United States, supra, is the conclusion that when the tax is assessed, an amount that may have been a deposit becomes a payment. Under the rationale of this long line of cases, if petitioner did not make payment of his 1966 additions to tax on September 18, 1973, when he sent a check for $218,292.77 to the IRS, he made the payment on December 12, 1977, when the additions to tax were assessed.

Petitioner in his brief cites cases dealing with the time the Government has for collection of a tax after its assessment. Petitioner concludes from these cases that "there has to be a collection of tax either by seizure of petitioner's property or the sum taken from his refund when issued." It is clear that the cases cited by petitioner are cases in which prior payment of the tax had not been made. Apparently petitioner is claiming that the handling by the Government in the computation of his overpayment of income tax was effectively a setoff of one tax against another. As is clear from the facts here stipulated, the refund to petitioner results from the determination of the amount of overpayment of income tax due to petitioner for the taxable year 1966. Section 6659 (as in effect for 1977) provided that additions to tax shall be paid upon notice or demand and shall be assessed, collected, and paid in the same manner as taxes, and that any reference to "tax" imposed by this title shall be deemed also to refer to additions to tax. There are cases involving various factual situations that indicate that where a deficiency for 1 year has been offset against a refund due for another year, or a different tax, such as a gift or estate tax, is offset against an overpayment of income tax, the payment date of the offset tax may be considered to be the date of the offset. We are not faced with that situation, since here what respondent did was not technically an offset, but merely the computation of the amount of overpayment of income tax due petitioner for the year

1966. In <u>Kingston Prods. Corp. v. United States</u>, 177 Ct. Cl. 471, 368 F.2d 281, 286, 287 (1966), there is a lengthy discussion of the difference in an "offset" which involves a different year's tax or a different tax and a computation of tax for a single taxable year. The court there pointed out that where a single tax for a single tax year is involved, certain adjustments will result in an increase in tax and other adjustments a decrease, with the net effect of all the adjustments resulting in either an overpayment or a deficiency, as the case may be. In that case, it was concluded that the principle of "offset" being date of payment had no application, since the facts in that case showed no offset of a deficiency against an overassessment, but the offsetting of an upward adjustment against a downward adjustment to a single tax for a single tax year. The court concluded that if such action could be designated as "offset", that type of "offset" would clearly not constitute a credit or payment within the meaning of the relevant statutes. See sections 6402(a), 6407. Cases dealing with collection on which petitioner relies are factually distinguishable from the present case because here petitioner paid the tax in full before it was assessed.

We, therefore, conclude that since payment of the additions to tax had been made at the time that these additions to tax were timely assessed on December 12, 1977, there was no amount to be collected when the Government computed an overpayment due to

petitioner in accordance with the decision of this Court and issued a check to petitioner on November 13, 1989, in the amount of $186,177.79. Since the "penalties and lien fee" of $39,967.34 were timely assessed and collected, petitioner's reliance on the period of limitations in section 6502(a) is misplaced, and petitioner has failed to show that respondent's computation of the interest includable in the refund payment made to petitioner for the year 1966 under the decision of this Court involving that year is incorrect.

Respondent further argues that, in any event, her right to a setoff is not restricted by the period of limitations. In Lewis v. Reynolds, 284 U.S. 281, 283 (1932) (quoting Lewis v. Reynolds, 48 F.2d 515, 516 (10th Cir. 1931), the Supreme Court stated with regard to the Commissioner's power to make a setoff after the expiration of the period of limitations, that--

> "the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability. While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him."
>
> *     *     *     *     *     *     *
>
> Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

-14-

In <u>Allen v. United States</u>, 73 AFTR2d 94-1728, 94-1 USTC par. 50,102 (N.D. Ga. 1994), the District Court applied the <u>Lewis v. Reynolds</u>, <u>supra</u>, case and found that the Commissioner had the right to reduce the taxpayer's refund by additions to tax after the expiration of the period of limitations for assessment of those additions to tax.  While it is not necessary to reach the issue of a setoff after the expiration of the period of limitations for assessment under the facts in this case, the rationale of <u>Lewis v. Reynolds</u>, <u>supra</u>, supports respondent's position in this case.

Petitioner also contends that since respondent abated the additions to tax, a presumption of correctness should attach to that abatement.  Under section 6404[4], the Secretary is authorized "to abate the unpaid portion of the assessment".  Respondent's abatement of the assessment of additions to tax was reversed by a subsequent entry to the IRS master file account for petitioner. The abatement was a mere clerical error, which does not carry

---

[4]  SEC. 6404.  ABATEMENTS.

     (a) <u>General Rule</u>.--The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which--

         (1) is excessive in amount, or

         (2) is assessed after the expiration of the period of limitations properly applicable thereto, or

         (3) is erroneously or illegally assessed.

with it any presumption of correctness.  See <u>Kroyer v. United States</u>, 73 Ct. Cl. 591, 55 F.2d 495, 499 (1932); <u>Crompton-Richmond Co. v. United States</u>, 311 F. Supp. 1184, 1187 (S.D.N.Y. 1970).

We shall deny petitioner's motion for summary judgment and grant respondent's motion for summary judgment.  Since we have held that respondent's motion for summary judgment will be granted, in accordance with the agreement of the parties, we deny petitioner's motion to amend his petition.

<u>An order will be issued denying petitioner's motion for summary judgment and petitioner's motion to amend petition and granting respondent's motion for summary judgment and decision will be entered for respondent.</u>