United States Court of Appeals,

Fifth Circuit.

No. 95-20785.

In the Matter of Stephen Edward BUGGE, Debtor,

Stephen Edward BUGGE, Appellant,

v.

UNITED STATES of America, Appellee.

Nov. 15, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Stephen Edward Bugge, a debtor in Chapter 7 bankruptcy proceedings and the former president of Coastal Crude Trucking, Inc. ("Coastal"), appeals from the district court's affirmance of the bankruptcy court's posttrial ruling that Bugge is liable for a $327,379.82 windfall profit tax penalty. He argues that the erroneous abatement of the IRS assessment—the assessment that is the basis for this tax penalty—should not have been reinstated because the statute of limitations had expired. Bugge also challenges the denial of his request for attorneys' fees. We affirm.

I

Because of severe corporate cash flow problems in the summer of 1983, Bugge, who had authority to approve all payments made from any Coastal corporate account, decided that Coastal would not pay

its windfall profit[1] taxes for the first and second quarters of 1983. He also chose not to pay certain payroll withholding taxes. In an affidavit, Bugge admitted that he had instructed Coastal's vice president of office administration, La Verne Glosson, to write checks to cover Coastal's most pressing debts and to wait until July 1983 to pay the outstanding taxes. When Glosson printed a check in mid-July for Coastal's tax liability, Bugge voided the check and falsely told her that the taxes had been paid by Coastal's Houston office.

In March 1985, within the applicable statute of limitations period for penalty assessments and pursuant to its authority under I.R.C. § 6672, the IRS assessed a 100% penalty totaling $327,379.82 against Bugge for Coastal's failure to pay its windfall profit taxes. An IRS employee manually documented the assessment on a "unit ledger card." Because section 6672 penalty assessments could not be fully entered into the "master file" as it was then configured on the IRS computer system, unit ledger cards were used to document such accounts by hand. Nonetheless, some limited information was recorded in the computerized master file, such as the amount of the assessment and the dates of the relevant tax periods. Pursuant to IRS procedure, Bugge's assessments for the two quarters were totaled and recorded as a single assessment of $327,379.82 under the second quarter of 1983. This second quarter assessment was noted on both the unit ledger card and in the

---

[1]At that time, the tax laws required the first purchaser of crude oil to withhold a windfall profit tax and remit the amounts withheld to the IRS. I.R.C. §§ 4995(a)(1), 4995(b)(2)(A)(I).

computer's master file. Thereafter, an IRS employee inexplicably crossed out the second quarter assessment on the unit ledger card and wrote in its place "8303," a code that refers to the first quarter of 1983. No change was made to the computer records.

In the course of preparing the account for collection, another IRS officer compared the information on the unit ledger card with the information in the computer's master file. The IRS collections officer discovered that Bugge's penalty assessment on the unit ledger card was recorded under the first quarter of 1983 but that the computer indicated an identical assessment for the second quarter of 1983. Believing the first quarter assessment to be an erroneous duplicate of the second quarter assessment, the collections officer submitted a request for adjustment of the first quarter assessment. The request form expressly stated: "Please abate the following [assessment], dated 03-12-85 in the amount of $327,379.82, since this is a duplicate assessment that has already been done using the correct [master file tax] and tax period." The collections manager approved the request for adjustment, which was sent to the regional service center for processing. Failing to realize that there was in fact no duplicate assessment for the first quarter, the regional service center adjusted Bugge's account by abating the only assessment that appeared in the computer's master file, which was the $327,379.82 assessment for the second quarter of 1983. Instead of eliminating a duplicate assessment in accordance with the written instructions in the request form, Bugge's account was reduced to zero and erroneously cleared of all

3

penalty assessments.

In addition to the section 6672 penalty assessed against Bugge, the IRS made similar assessments against Glosson and Coastal's co-owner, Benjamin Clifton. Glosson paid a portion of the penalty and filed a refund action in the United States District Court for the Southern District of Texas. At Glosson's request, Bugge executed an affidavit in an effort to assist Glosson in the refund litigation. In his affidavit, Bugge stated that he was responsible for the approval of all payments made from any Coastal corporate account and confirmed that Glosson had no authority to make tax payments. Bugge also admitted that he had lied to Glosson regarding the payment of Coastal's taxes. Bugge now says that he executed the affidavit under the assumption that there was no valid tax assessment pending against him and that, in any event, the statute of limitations for assessing such a penalty had expired.

In its litigation of Glosson's refund action, the government filed third-party claims against Bugge and Clifton for the previously assessed section 6672 tax penalties. While preparing for the Glosson trial, the government discovered that the IRS had erroneously abated the windfall profit tax assessment against Bugge. Although the statute of limitations for the assessment of such penalties had expired almost three and one-half years earlier, the IRS reinstated the tax assessment against Bugge.

A jury trial in Glosson's refund action was set for September 1991. Prior to the trial, Bugge filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern

4

District of Texas.  Because the automatic stay of the Bankruptcy
Code threatened to prevent Glosson's trial from proceeding, the
government and Bugge entered into a pretrial stipulation.  Among
other things, the parties agreed that Bugge's statute of
limitations defense to the tax penalty would be tried before the
bankruptcy court.  In addition, Bugge stipulated to "all issues
against him involving liability in the District Court case, and ...
that he was a "responsible person' and that he acted "willfully'
within the meaning of Section 6672 of the Internal Revenue Code, as
to the issues involved in the District Court case."  The district
court dismissed Bugge without prejudice as a party in the refund
litigation.

In the bankruptcy proceedings, Bugge moved for a determination
of his tax liability.  He argued that the windfall profit tax
penalty was invalid because the IRS had reassessed the penalty
after the statute of limitations had expired.  Following a trial,
the bankruptcy court ruled that Bugge was liable for windfall
profit and payroll withholding tax assessments in the respective
amounts of $327,379.82 and $6808.35.[2]  Adopting the reasoning of
the district court in *Crompton-Richmond Co. v. United States,* 311
F.Supp. 1184 (S.D.N.Y.1970),[3] the bankruptcy court held that the

[2]Bugge has conceded liability for the payroll withholding
taxes and does not challenge that assessment on appeal.

[3]In *Crompton-Richmond,* the IRS assessed a section 6672 penalty
against Crompton-Richmond Co., Inc. ("Crompton") for a corporate
debtor's failure to pay income and employment withholding taxes.
Crompton paid the penalty and sued the IRS for a refund.  In
defending against Crompton's refund action, the IRS filed various
third-party claims, including one against Vincent De Sousa.  While

5

assessment was properly reinstated under a judicially created exception to the statute of limitations. According to the bankruptcy court, this exception was applicable in Bugge's case because (i) the abatement resulted from a clerical error, and not from a substantive reevaluation of Bugge's tax liability; and (ii) Bugge was not prejudiced by the reinstatement in view of the fact that his tax liability for the windfall profit taxes remained the same as it had been in 1985. The district court affirmed without opinion. Bugge has timely appealed.

## II

A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. *Matter of Sadkin*, 36 F.3d 473, 475 (5th Cir.1994); *Chiasson v. Bingler (In re Oxford*

---

Crompton's lawsuit was pending, an IRS district director requested an adjustment to abate the assessment against De Sousa. The IRS's regional service center rejected the director's initial request because it was against IRS policy to grant an abatement while a refund suit was pending. Before the district director received notification of the initial rejection, he filed a second request to abate De Sousa's penalty. This second request, which was authorized by the district director, mistakenly was granted. When the IRS discovered the error, it immediately reversed its decision to abate and reinstated the assessment against De Sousa. The reinstatement occurred, however, after the statute of limitations had expired.

In ruling upon De Sousa's motion for summary judgment, the district court in *Crompton-Richmond* found that the abatement of De Sousa's assessment represented "plain ordinary clerical or bookkeeping errors arising out of the failure of some IRS office personnel to appreciate that there was a pending refund suit." *Crompton-Richmond,* 311 F.Supp. at 1185-1186. The district court concluded that " "[w]henever an abatement is issued because of a mistake of fact or bookkeeping error, the assessment can be reinstated, at least so long as this does not prejudice the taxpayer.' " *Id.* at 1187 (quoting *Kroyer v. United States,* 73 Ct.Cl. 591, 55 F.2d 495, 499 (1932)).

6

*Management Inc.),* 4 F.3d 1329, 1333 (5th Cir.1993). When the district court has affirmed the bankruptcy court's findings, as in this appeal, we apply the standard strictly and will reverse only when there is a firm conviction that error has been committed. *Id.* Conclusions of law are reviewed *de novo. Id.*

III

We begin our consideration of this appeal with a review of the relevant tax provisions in the Internal Revenue Code ("I.R.C." or the "Code"). The IRS initially assessed the tax penalties against Bugge in March 1985 pursuant to I.R.C. § 6672, which provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by [the Code] who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

I.R.C. § 6672 (West Supp.1996).

We previously have examined section 6672 and explained that under this section the IRS has a duty to collect and retain from certain corporate officers and employees those funds that their corporation has unlawfully failed to turn over to the government. *USLIFE Title Ins. Co. Of Dallas on Behalf of Mathews v. Harbison,* 784 F.2d 1238, 1239-40 (5th Cir.1986). In accordance with the statute, the IRS will assess up to 100% of the penalty against each of the persons that it determines to be responsible for the corporation's delinquency. *Id.* To be held liable under section 6672, a person must be deemed "responsible" within the meaning of

7

the statute, and must "willfully" fail to remit the amounts due to the government. *Id.*

Also relevant to our consideration is section 6404 of the Code, which empowers the IRS to abate the unpaid portion of an assessment that is (1) excessive in amount; (2) assessed after the expiration of the applicable period of limitations; or (3) erroneously or illegally assessed. I.R.C. § 6404(a).[4] We interpret the language of section 6404(a) to be permissive, not mandatory. *Poretto v. Usry,* 295 F.2d 499, 501 (5th Cir.1961). In other words, the statute provides the IRS with an option, but not a duty, to abate an assessment. *Id.* As a general rule, an abatement will "wipe out the assessment." *Carney Coal Co. v. Commissioner,* 10 B.T.A. 1397, 1403, 1928 WL 1341 (1928). If the IRS decides to reimpose a validly abated assessment, it should make the new assessment within the relevant statutory limitations period. *Id.; see also Crompton-Richmond,* 311 F.Supp. at 1186 n. 2.

With respect to Bugge's assessment, the relevant limitations

---

[4]Section 6404(a) provides:

> **(a) General rule.**—The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which—
>
> **(1)** is excessive in amount, or
>
> **(2)** is assessed after the expiration of the period of limitations properly applicable thereto, or
>
> **(3)** is erroneously or illegally assessed.

I.R.C. § 6404(a) (West 1989).

8

period is set forth in Code section 6501(a).[5]  As our court has explained before, "[t]he plain language of section 6501 establishes a three-year period of limitations "for assessing any tax imposed under the Code.' " *Green v. C.I.R.,* 963 F.2d 783, 787 (5th Cir.1992).  In essence, section 6501(a) requires the IRS to assess taxes no later than three years after the last day prescribed by law for filing the subject tax return.  Should the IRS fail to assess a tax timely, section 6501(a) prohibits the IRS from pursuing court enforcement proceedings after the three-year statute of limitations has expired.

Despite the Code's recognition of certain exceptions to the three-year statute of limitations, *see* I.R.C. § 6501(c), none of these is applicable in Bugge's case.  Nonetheless, the government argues, and the bankruptcy court agreed, that the judicially created exception articulated in *Crompton-Richmond,* 311 F.Supp. at 1186-87, permits the reinstatement of Bugge's abated assessment after the three-year statute of limitations had expired.

IV

We decline judicially to engraft further exceptions to the statute of limitations beyond those provided by Congress.  Instead,

---

[5]I.R.C. § 6501(a) provides in pertinent part:

> (a) **General rule.**—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed), ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

I.R.C. § 6501(a) (West Supp.1996).

9

we hold, that on the facts of this case, no effective tax abatement under the Secretary's statutory authority in I.R.C. § 6404(a)(1) ever occurred.

The collections manager in this case never intended or approved an abatement of Bugge's entire tax liability. Instead, the manager only approved an abatement of what appeared to be a duplicate assessment in the amount of $327,379.82. The record, including relevant portions of the trial testimony, shows that the IRS collections officer in charge of Bugge's account was merely attempting to clarify what he perceived as an inconsistency between IRS handwritten records and the computerized master file. In requesting the abatement, the collections officer intended, and received approval from his manager for, a reduction of Bugge's tax liability from two assessments of $327,379.82 each (i.e., a total liability of $654,759.64) to a single assessment of $327,379.82. This request was in accord with the IRS's discretionary authority under section 6404(a)(1) to abate an assessment that is "excessive in amount." *See* *supra* note 4 for full text of statute. However, when the regional service center processed the request and inadvertently eliminated Bugge's entire tax liability, it failed to act within the scope of the request that had been approved by the collections manager. In addition, by abating Bugge's actual and correct tax liability, it failed to act within the IRS's statutory authority to abate an excessive assessment. I.R.C. § 6404(a)(1). The only adjustment that the regional service center was authorized to make was the elimination of an apparent double-assessment in

10

certain IRS records. Because of a purely accidental and unintended processing error,[6] the regional service center executed an unintended abatement lacking any authorization.

Because the regional service center accidentally processed an unapproved abatement, it follows that the abatement of Bugge's tax assessment of $327,379.82 was never effective. Simply put, an unauthorized and accidental abatement of an entire assessment in contravention of section 6404(a)(1) is not effective. On the facts of this case, it is our view that what Bugge characterizes as a "reassessment after the period of limitations has expired" is more accurately analyzed as the correction of an inadvertent error.[7]

We therefore must conclude on this record that (1) Bugge's section 6672 tax liability for windfall profits in the amount of $327,379.82 was timely assessed within the limitations prescribed by I.R.C. § 6501(a); (2) Bugge's total windfall profit tax

---

[6]Bugge argues on appeal that the IRS errors in abating his assessment in its entirety were not clerical in nature but resulted from conscious decisions made by IRS personnel to abate his taxes. "Clerical errors are by their nature not errors in judgment but merely inadvertencies." *NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1208 (Fed.Cir.1995). The erroneous abatement of Bugge's entire tax liability resulted not from an error in judgment, but from an accidental act that was perhaps attributable to a computer system in transition. In any event, the record shows that IRS personnel never made conscious decisions to execute a 100% abatement of Bugge's windfall profit tax liability.

[7]A number of courts, including the United States Supreme Court, have recognized the authority of a government agency to correct inadvertent, ministerial errors (*see, e.g., American Trucking Ass'ns. v. Frisco Transportation Co.,* 358 U.S. 133, 144-46, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958); *Zenith Electronics Corp. v. United States,* 884 F.2d 556, 560 (Fed.Cir.1989)). In no way should this opinion, however, be interpreted as granting the IRS a special shield from responsibility for its errors, inadvertent or otherwise, that prejudice the taxpayer.

11

liability of $327,379.82 was never abated or extinguished pursuant to I.R.C. § 6404(a);  and (3) Bugge remains liable for the $327,379.82 assessment, plus statutory and accrued interest from the date assessed.  Having affirmed on liability, we also AFFIRM the denial of Bugge's request for attorneys' fees.

Accordingly, the district court's judgment affirming the bankruptcy court is

AFFIRMED.