**Stuart BECKER, Debtor–Appellant,**

v.

**INTERNAL REVENUE SERVICE, Appellee.**

No. 02 CIV.5044 (LAK).

United States District Court, S.D. New York.

Nov. 27, 2002.

---

Stuart A. Smith, for Debtor–Appellant.

Nicole Gueron, Assistant United States Attorney, James B. Comey, United States Attorney, for Appellee.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Debtor appeals from a decision of the Bankruptcy Court overruling, after trial, his objection to federal income and employment tax claims interposed by the Internal Revenue Service.[1] The appeal presents essentially two issues: whether the court below erred in holding that (1) debtor was not entitled to a business bad debt deduction on his personal income tax return for 1990 in respect of advances he had made to and payments he had made on

---

1. The Bankruptcy Court rendered a memorandum decision dated March 18, 2002. Debtor filed a notice of appeal on March 25, 2002. The order overruling the debtor's objection was entered on April 9, 2002. The notice of appeal therefore was premature, and no notice of appeal from the order itself ever was filed. The notice of appeal nevertheless is sufficient to invoke the Court's jurisdiction. See, e.g., Bucurescu v. 190A Realty Corp., 282 B.R. 124, 129 (S.D.N.Y.2002).

guarantees of obligations of his professional corporation because he had failed to establish the existence of a debtor-creditor relationship between himself and the corporate entity, and (2) the IRS was entitled to reinstate an employment tax assessment against the debtor, after the statute of limitations had run, where the assessment initially had been abated in error.

*The Bad Debt Deduction*

■ The Bankruptcy Court rejected the claimed bad debt deduction on the grounds that the debtor failed to establish that (a) there was a debtor-creditor relationship between him and his corporation, and (b) the corporation had a valid and enforceable obligation to pay a fixed or determinable sum of money. In doing so, it relied, among other things, on the five factors articulated in 26 U.S.C. § 385(b), as well as others set forth in cases including *Gilbert v. Commissioner*,[2] as pertinent to the determination of whether corporate obligations are debt or equity.[3] In finding that the advances to the corporation were equity rather than debt, the judge below rejected the debtor's contention that he had a reasonable expectation of repayment and found, *inter alia*, that the debtor established no definitive dates or demands for repayment, demanded no interest, and produced no notes or other evidence of indebtedness and that the corporation fur-

nished no security, had a high debt-equity ratio, and lacked the ability to obtain similar advances from other lenders.[4] In concluding that the payments on account of guarantees were not debt, he found that the corporation issued no writings to document indebtedness to the debtor, that repayment depended upon the success of the business, that third party lenders refused to loan to the corporation absent the personal guarantee because of its poor financial condition, that the corporation's initial capitalization was very thin, and that the corporation provided no security.[5]

■ As debtor concedes,[6] the characterization of corporate obligations as debt or equity is primarily a question of fact.[7] While debtor argues that the evidence should have been weighed differently,[8] he does not contend that any of the Bankruptcy Judge's findings were clearly erroneous. Rather, he argues that the court below erroneously relied upon the opinion of the government's expert[9] and on Section 385(b) of the Internal Revenue Code, 26 U.S.C. 385(b). Neither contention is meritorious.

The first contention is based on the fact that the expert witness, Mr. Rapp, testified that the advances were capital contributions because they were intended to pre-

---

**2.** 262 F.2d 512, 514 (2d Cir.), *cert. denied*, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959).

**3.** Mem. Dec. 7–8, 11.

**4.** *Id.* 7–10.

**5.** *Id.* 10–11.

**6.** Debtor's Mem. 21–22.

**7.** *Gilbert*, 248 F.2d at 400; *Cohen v. Commissioner*, 148 F.2d 336 (2d Cir.1945); Rev. Proc. 99–3, § 4.02(1), 1999–1 IRB 103; I Boris I. Bittker & James S. Eustace, Federal Income

Taxation of Corporations and Shareholders § 4.02[6] (7th ed.2002). *But cf. Gilbert*, 248 F.2d at 408 (Waterman, J., concurring) (mixed question of law and fact).

**8.** For example, he argues that the significance of the thin capitalization of the corporation is less in a service corporation like this accounting firm than in a business dependent upon hard assets. (*Id.* at 22 n. 19, 26) At oral argument, he argued more extensively that some of the factors relied upon below involved actions which, in a close corporation setting, are essentially formalistic.

**9.** Debtor's Mem. 24.

serve the client base of the corporation which, under Standard Canons of the Accounting Profession, had no proprietary rights in its client base.[10] But this is a distortion and oversimplification of Rapp's testimony, which broadly supported the IRS's position and the findings below for a host of reasons.

■ The contention regarding Section 385(b) is similarly misguided, distorting both what the court below actually did and the significance of the statute. To be sure, the debtor is correct in arguing that Section 385 of the Code authorized the adoption of regulations to determine whether an interest in a corporation is debt or equity, that Section 385(b) listed five factors which "may" be included in such regulations,[11] and that no regulations ever have been adopted.[12] But that is not to say that the factors that Congress in Section 385(b) suggested for consideration, among others, in any regulations are irrelevant to the debt-equity determination simply because no regulations ever were adopted. Indeed, the case law makes crystal clear that the question of whether an interest is debt or equity depends upon its true nature, which must be determined in light of a host of pertinent factors including but not limited to factors that happen also to be listed in Section 385(b).[13] Thus, the fact

that Section 385 regulations never were promulgated does not even begin to transform the debtor's sow's ear into a silk purse. For the court below did precisely what it ought to have done—it made findings as to the subsidiary facts pertinent to the classification of the advances and guarantee payments as debt or equity, weighed them all together, and made an ultimate finding that they constituted equity.[14] That the debtor or, for that matter, another judge might have come to a different conclusion based on the same subsidiary facts is neither here nor there. There was no error of fact or law.

## The Employment Tax Issue

■ The debtor concedes that the reinstatement of the employment tax assessment after the expiration of the statute of limitations was effective against the debtor, notwithstanding the running of the statute of limitations, unless the debtor was prejudiced.[15] The court below found, as a factual matter, that he was not.[16] Although the debtor has steered clear of challenging that finding as clearly erroneous, he does contend that he relied to his detriment on the abatement of the assessment and, in consequence, that the em-

10. Debtor's Mem. 24.

11. 26 U.S.C. § 385(b).

12. The history is set out in 1 BITTKER & EUSTACE, *supra*, ¶ 4.02[8]. *See also* Margaret A. Gibson, *The Intractable Debt/Equity Problem: A New Structure for Analyzing Shareholder Advances*, 81 Nw. U.L.REV. 452, 452–54 (1987).

13. *See, e.g., Gilbert*, 248 F.2d at 402, 406–07. Indeed, three of the five Section 385(b) factors—the debt-equity ratio, the existence of a written unconditional promise to pay on a fixed date or on demand a sum certain plus a fixed rate of interest, and the relationship between holdings of stock and holdings of the

interest in question—are mentioned specifically in *Gilbert*. *Id.* at 402, 406–07. *See also Nassau Lens Co. v. Comm'r*, 308 F.2d 39, 46–47 (2d Cir.1962). A fourth—the existence or absence of subordination to or preference over indebtedness—was mentioned as pertinent in *Nassau Lens*. *Id.* at 47. The fifth Section 385(b) factor, convertibility of the interest into equity, is of obvious relevance.

14. *See generally* Gibson, *supra*, 81 Nw. U.L. REV. at 462–65 (describing and criticizing governing judicial approach).

15. Debtor's Mem. 30–31.

16. Mem. Dec. 13.

ployment tax claim should have been dismissed.

In June 1988, the IRS assessed debtor for over $182,000 for employment taxes payable by his corporation for 1987 and a limited prior period. In late 1989, the Service mistakenly abated substantially the entire liability. It reinstated the assessment in 1991. Although there is a dispute, unresolved by the court below, as to when the debtor learned of the reinstatement, the debtor was aware of the reinstatement no later than November 20, 1992, when the IRS filed its proof of claim in the bankruptcy court.

The debtor's brief in this Court asserts that he was prejudiced by the belated reinstatement because he acted in reliance on the lack of the claimed liability in four respects: he allegedly (1) agreed to make monthly payments totaling about $300,000 to a group of creditors of his former firm pursuant to a November 1988 settlement agreement, this in full satisfaction of obligations of $3 to $4 million; (2) entered into a residential lease for his family at a rental in excess of what he would have undertaken had he known of the assessment; (3) made payments for educational expenses of his children that he was obliged to make pursuant to a settlement agreement with his ex-wife; and (4) agreed to a settlement of litigation with Laventhol & Horvath.[17]

Certain of these contentions are afterthoughts that will not be considered here. In the joint pretrial order below, debtor asserted that he relied to his detriment on the abatement of the assessment only in the respects mentioned in clauses (1) and (4) of the preceding paragraph.[18] There was no mention of the residential lease or the family educational expenses as products of detrimental reliance on the erroneous abatement. While there was very limited mention of these points in the debtor's self-serving trial testimony, there is no indication in the record that the judge below regarded these contentions as properly before him notwithstanding their absence from the pretrial order. Accordingly, this Court will not consider them.[19]

Having pruned away the underbrush, the Court turns to the merits of the debtor's remaining claims of detrimental reliance. At the outset, it must be noted that the court below, although it found no prejudice, made no specific findings as to the two remaining claimed incidents.

The first of these claims is patently bogus. The debtor did enter into a settlement agreement with a group of banks in November 1988.[20] But that was not the claimed detrimental reliance. When asked what he did in reliance on the abatement of the assessment, the debtor testified, in relevant part, that he entered

17. Def. Mem. 14–15.

18. Joint pretrial order, at 8–10.

19. The debtor's post-trial proposed findings of fact and conclusions of law did raise these matters. PF ¶ 82. But there was no motion to amend the pretrial order or the pleadings to conform to the proof. The court below made no findings on these points, one way or the other, so there is no basis for concluding that it allowed an amendment informally and *sub silentio*.

The pretrial order "controls the subsequent course of the action." FED. R. CIV. P. 16(e).

Absent leave of the trial court, the parties are held to the issues there set forth. *See, e.g.*, 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE. CIVIL 2D § 1527, at 269–79 (1990). It manifestly would be inappropriate for this Court to entertain the possibility of reversing the court below based on a factual contention that was not made in the pretrial order where leave to expand the contentions at trial neither was sought nor granted.

20. GX OO.

into a stipulation of settlement of adversary proceedings brought against him by a group of banks, a stipulation that required him to make quite substantial payments to the banks.[21] On cross-examination, however, the debtor admitted that he settled the adversary proceedings *after* the IRS filing its proof of claim in the bankruptcy.[22] Thus, at the time the debtor entered into the settlement and agreed to make the payments upon which he now relies, he knew that the assessment had been reinstated and that the IRS claimed that he owed the employment taxes at issue. Thus, the trial court's finding that there was no prejudice is not rendered clearly erroneous by the debtor's agreement to this settlement, as it certainly was entitled to find, as a matter of fact, that any reliance on the erroneous abatement in settling this matter after receipt of the November 1992 notice of claim was unreasonable. Indeed, this Court would hold that any such reliance would have been unreasonable as a matter of law.

The claim with respect to the Laventhol & Horvath settlement is equally deficient. While debtor's contentions in the joint pretrial order referred to that settlement, they did not in terms claim that the debtor had entered into that arrangement in reliance on the abatement of the assessment.[23] When the debtor was asked what he did in reliance on the abatement and prior to his learning that the abatement was erroneous, he did not mention it.[24] As debtor's counsel conceded at oral argument, the only evidence of record shows that the Laventhol settlement was approved by the Court below in January 1994, some fourteen months after the filing of the IRS's proof of claim. This alone probably would suffice to defeat any claim of detrimental reliance, even if the settlement had been agreed to prior to the filing of the proof of claim, because the debtor could have sought relief from the stipulation of settlement from the bankruptcy court if the filing of the proof of claim had materially changed his circumstances. But there is no need to rely on this point. The burden of proving detrimental reliance was on the debtor, as his position was analogous to a claim of equitable estoppel.[25] And since he came forward with no evidence that he obligated himself to the Laventhol settlement before the proof of claim was filed, there is no basis for concluding that the finding made below of no prejudice was clearly erroneous.[26] In any case, this Court would hold, as a matter of law, that debtor offered insufficient proof to warrant a conclusion that he reasonably relied to his detriment on the erroneous abatement in entering into the Laventhol settlement.

### Conclusion

The Court has considered all of the debtor's contentions, regardless of whether they are mentioned specifically here. They are without merit. The order which the debtor is deemed to have appealed from is affirmed.

SO ORDERED.

---

21. Tr., Sept. 13, 1999, at 58–62. (The stipulation of settlement was GX G.)

22. *Id.* at 68–70.

23. Joint pretrial order at 10.

24. Tr., Sept. 13, 1999, at 52–53

25. *See, e.g., City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir.1994).

26. Indeed, the debtor's counsel stated at oral argument that he understood (from matters outside the record) that the Laventhol settlement was agreed to in January 1994, which was long after the November 1992 proof of claim.